UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER BROWN,

      Petitioner,

      v.

UNITED STATES OF AMERICA,

      Respondent.

20-CR-167
24-CV-57
DECISION & ORDER

---

Before the Court are motions filed by the pro se petitioner, Christopher Brown, to vacate his sentence under 28 U.S.C. § 2255, Docket Item 119; to grant his request to file an untimely appeal, *id.*; and to order an evidentiary hearing and appoint counsel, Docket Item 135.  For the reasons that follow, this Court denies Brown's motions.

## **BACKGROUND**

On June 15, 2022, Brown pleaded guilty to counts 1 and 2 of a superseding information, charging that he distributed child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and that he possessed a firearm after he had been convicted of a felony in violation of 18 U.S.C. § 922(g)(1).  *See* Docket Items 67 and 69.  In his plea agreement, Brown agreed to waive his right to appeal or collaterally attack any sentence imposed within or below the United States Sentencing Guidelines ("USSG" or "Guidelines") range of 168 to 210 months' imprisonment.  Docket Item 67 at ¶¶ 19, 35-37.

During the plea colloquy, this Court questioned Brown extensively to ensure that he was proceeding knowingly and voluntarily.  *See generally* Docket Item 130.  The Court specifically inquired about Brown's satisfaction with his attorney.  *Id.* at 56-57.  And the Court confirmed that Brown had read the entire plea agreement, had discussed it with his attorney, understood everything in it, and agreed with everything in it.  *Id.* at 54-55.

The Court also confirmed that Brown understood the Guidelines, their calculation, and the impact they might have on his sentence.  *Id.* at 44-50.  For example, the Court specifically confirmed Brown's understanding that although he was "not pleading guilty to [the] production of child pornography," his "[G]uidelines range [would] be determined as if [he had been] convicted of production of child pornography." *Id.* at 46.  Likewise, the Court ensured that Brown understood that there would be several Guidelines enhancements, including a two-level increase for distributing child pornography.  *Id.* at 46-47.  And the Court confirmed with Brown that he was "giving up [his] right to appeal or to collaterally attack [his] convictions" as well as his sentence if he was sentenced within or below his Guidelines range.  *Id.* at 52-53.

The Court then sentenced Brown to a below-Guidelines term of 150 months' imprisonment on count 1 and 120 months' imprisonment on count 2 to run concurrently.  Docket Item 132 at 34  Brown did not appeal.  But on January 12, 2024, he filed a pro se motion under 28 U.S.C. § 2255 to vacate his conviction, alleging that his defense counsel had been ineffective.  Docket Item 119.

On March 13, 2024, Brown supplemented his motion.  Docket Item 126.  Several

weeks later, the government responded.  Docket Item 133.  Brown then replied and

asked the Court to order an evidentiary hearing and appoint counsel.  Docket Item 135.

## DISCUSSION

I.    **MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28
      U.S.C. § 2255.**

Brown seeks relief under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to impose such sentence,
> or that the sentence was in excess of the maximum authorized by law, or is
> otherwise subject to collateral attack, may move the court which imposed
> the sentence to vacate, set aside[,] or correct the sentence.

*Id.* § 2255(a).  Brown claims that his conviction should be vacated because his

attorneys failed to provide him with effective assistance of counsel.  *See generally*

Docket Items 119 and 126.  Alternatively, he argues that he should be allowed to file an

out-of-time appeal.  Docket Item 119 at 48.  He also asks this Court to "order an

evidentiary hearing, permit discovery, and appoint [him] counsel."  Docket Item 135 at

14.

A.    **Brown's Appeal Waiver**

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally

attack his conviction and/or sentence is enforceable."  *Sanford v. United States*, 841

F.3d 578, 580 (2d Cir. 2016); *see Cook v. United States*, 84 F.4th 118, 122 (2d Cir.

2023).  In fact, if such waivers are not enforced, the promise not to appeal would

"become[] meaningless and would cease to have value as a bargaining chip in the

3

hands of defendants." *Cook*, 84 F.4th at 122 (quoting *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995)).

"Exceptions to the presumption of the enforceability of a waiver occupy a very circumscribed area of [the Second Circuit's] jurisprudence." *United States v. Burden*, 860 F.3d 45, 51 (2d Cir. 2017) (alterations omitted) (quoting *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000)). More specifically, the Second Circuit has

> articulated four grounds on which an appeal waiver may be deemed unenforceable: (1) where the "waiver was not made knowingly, voluntarily, and competently[";] (2) where the sentence was "based on constitutionally impermissible factors, such as ethnic, racial[,] or other prohibited biases[";] (3) where the government breached the agreement containing the waiver; and (4) where the district court "failed to enunciate any rationale for the defendant's sentence."

*Id.* (quoting *Gomez-Perez*, 215 F.3d at 319).

An ineffective assistance of counsel claim "challenging 'the constitutionality of the *process* by which he waived [his right to appeal]'" is one way that a defendant can demonstrate that his plea was not knowing and voluntary. *See Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (per curiam) (alterations in original) (quoting *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001)); *see also United States v. Lloyd*, 901 F.3d 111, 124 (2d Cir. 2018) (explaining that a defendant's "guilty plea [is] invalid and his appeal waiver [is] unenforceable if he prevail[s] on his claim that he received constitutionally ineffective assistance of counsel during his plea proceedings"). That is because a claim "challenging the attorney's *advice* about [the defendant's] bargaining position . . . connect[s] the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct." *Parisi*, 529 F.3d at 139.

**B.      Ineffective Assistance of Counsel Claims**

To establish the ineffective assistance of counsel, a defendant "must (1) demonstrate that . . . counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (internal citation omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984)).  District courts need not address both components if a petitioner fails to establish either one.  *Strickland*, 466 U.S. at 697; *Garner v. Lee*, 908 F.3d 845, 861 (2d Cir. 2018).

Under the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  The petitioner may overcome this presumption by showing "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citing *Strickland*, 466 U.S. at 688-89.  In considering whether counsel "failed to exercise the skills and diligence that a reasonably competent attorney would provide under similar circumstances," *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996) (emphasis omitted), courts look to the totality of the circumstances, are "highly deferential," and make "every effort . . . to eliminate the distorting effects of hindsight," *Strickland*, 466 U.S. at 688-89.

Under the second prong, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  In the context of a guilty plea, the prejudice prong requires the defendant to "show that there is a reasonable probability that were it not for counsel's

errors, he would not have pled guilty and would have proceeded to trial." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (discussing ineffective assistance claim in the context of a motion to withdraw a plea). That is, a defendant must show that "the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).

A defendant may "make this showing by producing both a sworn affidavit or testimony stating that he would have accepted or rejected a plea agreement but for his counsel's deficient performance and also some additional 'objective evidence' supporting his claim." *United States v. Frederick*, 526 F. App'x 91, 93 (2d Cir. 2013) (summary order) (quoting *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998)). Where a defendant specifically claims that counsel "misled him as to the possible sentence [that] might result from" his guilty plea, "the issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." *Arteca*, 411 F.3d at 320 (quoting *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992)); *see United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (counsel's performance is generally not considered deficient even if counsel made an incorrect estimation or prediction of sentencing before the defendant pleaded guilty).

### 1.    Advice in the Plea-Bargaining Process

Several of Brown's claims challenge his attorney's advice to him in the plea-bargaining process. As explained above, those claims are not barred by his appeal waiver. *See supra* Section I.A. But for the reasons that follow, Brown has failed to establish that his attorney was ineffective in connection with Brown's plea.

a.    *Failure to Investigate*

Brown argues that his plea to the child pornography charge was not knowing and voluntary because his counsel failed to investigate and to realize that "the evidence did not support the charge."  Docket Item 119 at 4.  Brown does not allege that further investigation would have uncovered additional evidence; rather, he alleges that his attorney should have argued that "the evidence did not support the charge" because "the video" he recorded of a minor victim in the bathroom "lack[ed] any sexually explicit conduct."  *Id.* at 4, 17.  More specifically, he says that there was no evidence that "his intention was to capture the genitals [of the child] as a main focal point."  Docket Item 135 at 4-5.  "[H]ad the [C]ourt or defense counsel explained the critical or essential element of the crime to [him]," Brown says, he "would not have entered a plea of guilty." *Id.* at 11.

Brown's argument fails most basically because he did not plead guilty to distributing the 2017 video that he recorded himself, which was of "a thirteen-year-old female."  *See* Docket Item 67 at ¶ 7.  Rather, he pleaded to distribution of "a file containing a video of child pornography depicting a pre-pubescent female" that he had downloaded in April 2020 using "a peer-to-peer network."  *See id.*  So whether or not the 2017 video was "sexually explicit" and "support[ed] the [child pornography] charge," *see* Docket Item 119 at 4, 17, is of no moment because Brown did not plead guilty to distributing that video.

Brown may be suggesting that his Guidelines range should not have been computed as if he produced child pornography because the video he produced in 2017 did not constitute child pornography.  But that claim fails as well.

First, Brown's assertion that he did not understand what constitutes child pornography is belied by the factual basis to which Brown agreed in the plea agreement and by Brown's sworn testimony at the plea hearing. The plea agreement stated that Brown "agree[d] to the following facts":

> a.  On March 17, 2017, in the Western District of New York, the defendant used and employed Minor Victim 1, a thirteen-year-old female, *to engage in sexually explicit conduct* for the purpose of producing visual depictions of such conduct.
>
> b.  Specifically, on or about March 17, 2017, the defendant knowingly concealed a camera in a bathroom in his home *for the purpose of recording a video of Minor Victim 1 with her genitals exposed*. The defendant made the recording without Minor Victim 1's knowledge.
>
> c.  The defendant preserved a copy of the video recording of Minor Victim 1 on a Memorex DVD, which was made in Taiwan and had previously been mailed, shipped, or transported in or affecting interstate or foreign commerce.

Docket Item 67 at ¶ 7 (emphasis added). At the plea hearing, the prosecutor read those facts. Docket Item 130 at 37-38. The Court asked Brown: "Is everything he said about you and about your conduct and about your intent true and correct?" *Id*. at 40. Brown replied: "Yes, sir." *Id.* The Court then asked the government how it would "prove those facts if this case were to go to trial," and the government explained in depth the evidence it would present to prove its case. *Id*. at 40-42. Brown confirmed that he had "hear[d] and underst[ood] everything the prosecutor [had] said about how the government would prove its case" and that he did not "disagree with anything [the prosecutor had] said." *Id*. at 42.

Moreover, the Court explicitly addressed with Brown the essential elements of the offense to which he pleaded guilty, including his knowing distribution of "child pornography as that term is defined by federal law" and his knowledge that what he

distributed "constituted child pornography." *Id.* at 22-24. Brown also acknowledged under oath that he had "discussed the charges and their elements with [his] lawyer" and that he did not "have any questions about either the charges or about any of the elements." *Id.* at 24. The Court then confirmed that Passafiume had discussed the facts of the case and potential defenses with Brown. *Id.* at 55.

What is more, Brown acknowledged—twice—that he was satisfied with Passafiume's advice and counsel; he likewise explicitly acknowledged that he had read the plea agreement, discussed it with Passafiume before signing it, understood it, and agreed with everything in it. *Id.* at 10-11, 54, 56. The Court confirmed with Brown that Passafiume had advised him of all the rights he was giving up by pleading guilty (including his unrestricted right to appeal), that he understood those rights, and that by pleading guilty he was giving up those rights willingly. *Id.* at 19-20.

Brown's "bare allegations" in his petition do not overcome his sworn statements, "which must be given [the] presumptive force of truth." *See Mejia v. United States*, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010) (citing *Hernandez*, 242 F.3d at 112-13). In connection with the crime to which he pleaded guilty, he admitted under oath and in his plea agreement that in 2020 he "utilized a peer-to-peer network on the Internet to download and distribute a file containing a video of child pornography depicting a pre-pubescent female." Docket Item 67 at ¶ 7; Docket Item 130 at 38-40. In connection with the computation of his Guidelines range, Brown admitted under oath and in his plea agreement that in 2017 he "used and employed" a thirteen-year-old girl "to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct" when he put a concealed camera in the bathroom to record her "with her genitals

exposed." Docket Item 67 at ¶ 7; Docket Item 130 at 38-40. And, as discussed above, he further acknowledged that he had discussed the charges and evidence with his lawyer, Docket Item 130 at 24, and was "satisfied with the representation . . . Passafiume ha[d] provided," *id.* at 56.

In sum, there is no evidentiary support for Brown's belated assertion that he would not have pleaded guilty were it not for the ineffective assistance of his lawyer. On the contrary, the record, and especially Brown's statements under oath at the plea colloquy, demonstrate just the opposite.

b.    *Agreement to Sentencing Enhancements*

Brown also argues that his counsel should have objected to the sentencing enhancement for distribution of child pornography and to a sentencing calculation based on production of child pornography. Docket Item 119 at 7, 36-37, 40. Because Brown is proceeding pro se, the Court liberally construes his argument again as challenging the advice Passafiume gave him regarding the plea agreement, thus avoiding the plea waiver. *See Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." (citation, internal quotation marks, and italics omitted)). But even with that generous spin, Brown's argument does not pass muster.

As an initial matter, any contention that Brown did not understand what he agreed to is belied by his testimony under oath at the plea colloquy. Brown explicitly stated that he had been advised of and understood the enhancement for distributing child pornography, as well as the sentencing calculation based on the production of child pornography. *Id.* at 46. He specifically acknowledged that he agreed to "a two-

level increase . . . because [he had] engaged in distribution" and that while he was not pleading guilty to production of child pornography, he agreed that his Guidelines range would be determined as though he had been convicted of production. *Id.* The Court also confirmed that Brown had talked with his lawyer "about how the [G]uidelines might be applied in [his] case." *Id.* at 45. Thus, even assuming for the sake of argument that Passafiume "misadvised [Brown] in some way regarding" the sentencing enhancements, that "error was cured by the Court's thorough questioning [of Brown] throughout the plea" colloquy. *See LaMarco v. United States*, 336 F. Supp. 3d 152, 170 (E.D.N.Y. 2018).

What is more, and as the government observes, "it was an objectively reasonable strategic decision for counsel to advise [Brown] to accept the plea agreement offered by the government." *See* Docket Item 133 at 17. Indeed, "the plea agreement secured dismissal of the [i]ndictment and, most significantly, eliminated the mandatory minimum sentence of 15 years that would have been required upon conviction of [c]ount [o]ne of the [i]ndictment (production of child pornography)." *Id.* In other words, even though Brown agreed that his Guidelines would be calculated as if he had been convicted of production of child pornography, he avoided the mandatory minimum on that charge. And his sentence of 150 months not only was below the Guidelines range, it also was well below the 15-year mandatory minimum he would have faced had he been convicted of production.

Brown therefore has not shown that his attorney was ineffective for counseling him to agree to the Guidelines calculation in the plea agreement.

c.      *Failure to Challenge the Search and Seizure of Firearms*

Brown next argues that his counsel failed to challenge a search, and the seizure

of firearms, at his residence.  Docket Item 126 at 1-2.  He says that although there was

"a warrant . . . authorized by [a j]udge" to search Brown's residence for child

pornography, the firearms "were not in plain sight[] and could not have been mistaken

for electronic devices."  *Id.*  Brown argues that the firearms "were not covered by the

search warrant" and that his counsel "fail[ed] . . . to challenge the illegal search and

seizure."  *Id.* at 2.

This Court again construes this argument as pertaining to the advice Passafiume

gave him regarding his plea-bargaining position.  And if there were a meritorious motion

to suppress but Passafiume advised him to the contrary, that potentially could constitute

ineffective assistance of counsel.  But that was not the case here.

"[T]o prevail on a claim of ineffective assistance of counsel for failure to bring a

suppression motion[,] the underlying motion must be shown to be meritorious, and there

must be a reasonable probability that the verdict would have been different if the

evidence had been suppressed."  *Curzi v. United States*, 773 F. Supp. 535, 544

(E.D.N.Y. 1991) (citing *United States v. Matos*, 905 F.2d 30, 32 (2d Cir.1990) and

*United States v. Cruz*, 785 F.2d 399, 405-06 (2d Cir. 1986)), *aff'd sub nom. Laaman v.

United States*, 973 F.2d 107 (2d Cir. 1992).  Additionally, the "defendant must show that

counsel's decision not to bring the motion was unreasonable under prevailing

professional norms."  *Id.* at 544-45 (citing *Matos*, 905 F.2d at 32).

Here, as the government observes, United States "Magistrate Judge Michael J.

Roemer signed a search warrant authorizing [the] FBI to search [Brown]'s residence

and seize child pornography in any form, whether in hard copy format or in digital format

on electronic devices such as computers, cell phones, or storage media like CDs and DVDs." Docket Item 133 at 18. "As a result, FBI agents were permitted to thoroughly search [Brown]'s residence" and during that search they found a "recording of the minor victim . . . on a DVD hidden behind a bed headboard," as well as "firearms, which consisted of three rifles and two handguns." *Id.* The firearms—which Brown says were found "inside a blanket . . . behind a dresser in the home office" and "in a towel inside the linen closet," Docket Item 126 at 2—were in places where child pornography on computer discs, cell phones, thumb drives, and the like might well be found and where the FBI therefore was authorized to search. And because Brown "had a prior felony conviction from state court," the officers knew that he "was not allowed to possess the firearms." Docket Item 133 at 18-19; *see Horton v. California*, 496 U.S. 128, 130-31, 141-42 (1990) (holding that police lawfully seized weapons found in plain view while searching defendant's home on search warrant for proceeds from bank robbery). Based on these facts, it was objectively reasonable for defense counsel to choose not to file a suppression motion that was bound to fail.

### d. Failure to move to suppress statement

In his reply, Brown argues for the first time that Passafiume failed to object to Brown's signed statement as coerced. *See* Docket Item 135 at 6-7. That argument is waived. *See Melo v. United States*, 825 F. Supp. 2d 457, 464 (S.D.N.Y. 2011) (explaining that pro se petitioner had "waived [an] argument because he raised it for the first time in his [r]eply"). But even if the Court were to consider the argument, the Court would reject it.

In the case on which Brown relies—*United States v. Nunez-Felix*, 57 F.3d 1078, 1995 WL 323745 (9th Cir. 1995)—the defendant "recanted and confessed only after the

agents had invoked their coercive tactics." *Id.* at *4. More specifically, the agents "suddenly and repeatedly accused [the defendant] of lying" after "30 to 40 minutes of questioning had passed and [the defendant] had answered all of the agents' questions . . . but not to the agents' liking." *Id.* Moreover, "the interrogation lasted a very long time—almost four hours." *Id.* Here, although Brown notes that there "[t]here were between 10 and 15 federal agents with guns present in the house while [he] was being interrogated" and that he was "visibly distraught" at the end of the interview, there is no indication of coercive tactics of the type used in *Nunez-Felix*. Docket Item 135 at 6. Indeed, the Second Circuit has held that a statement should not be suppressed under circumstances similar to those here. *See United States v. Faux*, 828 F.3d 130, 137-39 (2d Cir. 2016) (reversing district court's decision to suppress statement despite fact that "the two-hour interview was conducted while [10 to 15] officers swarmed about [the defendant's] home").

Thus, this Court finds that Brown has not shown that a suppression motion would have been "meritorious" and that failing to file such a motion prior to plea negotiations constituted ineffective assistance. *See Curzi*, 773 F. Supp. at 544.

### 2.    Evidence Presented at Sentencing

Brown also argues that his attorney at sentencing, Criminal Justice Act panel attorney Brian Hutchison, provided ineffective assistance of counsel because "[n]o additional witnesses, friends, or family were investigated or contacted; and no additional background investigation was completed" before sentencing. Docket Item 119 at 7. But that argument falls squarely within Brown's appeal waiver. As explained above, Brown "waive[d] the right to appeal and collaterally attack any component of a sentence

14

imposed by the Court which [was] within or . . . less than the sentencing range for imprisonment [of 168 to 210 months], a fine [of $40,000 to $250,000,] and supervised release [of life]." *See* Docket Item 67 at ¶¶ 19, 35. The Court sentenced Brown *below* that range with an aggregate term of imprisonment of 150 months, supervised release of 30 years, and no fine. *See* Docket Item 112 at 2-3, 6. Thus, this Court finds that Brown's arguments about evidence presented at his sentencing are barred.[1]

### 3.    Failure to File an Appeal

Finally, Brown repeatedly charges Hutchison with "refus[ing] to file [a] direct appeal." *See* Docket Item 119 at 4, 6-7, 9. That argument fails as well.

The Second Circuit "take[s] very seriously the need to make sure that defendants are not unfairly deprived of the opportunity to appeal, even after a waiver appears to bar appeal." *Campusano v. United States*, 442 F.3d 770, 775 (2d Cir. 2006). In fact, counsel is deemed ineffective for failing to file a notice of appeal after receiving a "specific instruction" from the client to do so. *Id.* at 773 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)); *see United States v. Moreno-Rivera*, 472 F.3d 49, 52 (2d Cir. 2006) ("What matters for purposes of that claim is whether [the defendant]'s trial counsel 'fail[ed] to file a *requested* appeal' . . . ." (alterations in original) (quoting *Garcia*

---

[1] Even if this argument were not barred, however, it would not be successful. As Hutchison explains in his affidavit, he submitted a sentencing memorandum that "was over 20 pages long and addressed many of the issues in . . . Brown's case that he alleges were not properly addressed." Docket Item 133-1 at ¶ 4. Hutchison also submitted "character reference letters from four . . . of . . . Brown's family members" and "reached out to additional family members at . . . Brown's request[] but did not receive a character reference letter from them." *Id.* at ¶ 5. So there is no support for Brown's assertion that Hutchison did not give a thorough enough presentation at sentencing.

*v. United States*, 278 F.3d 134, 137 (2d Cir. 2002))).  And that is true even when the defendant has entered into a valid appeal waiver.  *Campusano*, 442 F.3d at 771-72.

The district court is required to engage in fact-finding to determine whether the defendant specifically requested an appeal.  *Id.* at 776.  But that does not mean that a hearing is required, and the court "has discretion to determine [whether] a testimonial hearing will be conducted."  *Id.*  And the court need not hold an evidentiary hearing "where both parties have filed affidavits and thus 'the testimony of [the petitioner] and his trial counsel would add little or nothing to the written submissions.'"  *Kapelioujnyi v. United States*, 779 F. Supp. 2d 250, 253 (E.D.N.Y. 2009) (quoting *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)), *aff'd*, 422 F. App'x 25 (2d Cir. 2011) (summary order).

Brown asserts that he instructed Hutchison to file an appeal "[s]hortly after sentencing" and that Hutchison "refused to file an appeal . . . , [sta]ting that there was an appellate waiver in the plea agreement and informing [Brown] that he could not file an appeal."  Docket Item 119 at 8.  Brown claims that he also "tried calling" Hutchison and even "wrote a letter to [Hutchison] where he insisted that an appeal be filed."  *Id.* at 41.  And Brown claims that his "family was also unsuccessful in reaching [Hutchison about] an appeal."  *Id.*

Hutchison's sworn affidavit flatly contradicts Brown's allegations.  In that affidavit, Hutchison says that he is unaware of any request to file an appeal.  Docket Item 133-1 at ¶ 13.  Hutchison says that "[o]n the day of sentencing, . . . Brown did not request that [Hutchison] file an appeal on his behalf."  *Id.* at ¶ 8.  Hutchison "did not hear from . . . Brown again until [he] received a letter from him on August 15, 2023[,] requesting

various documents." *Id.* at ¶ 10.  Hutchison mailed most of the requested documents to

Brown and advised him that to obtain the remaining documents, he would need "to

contact the [C]ourt directly." *Id.*  Hutchison told "Brown to contact [him] if he required

anything additional," but Hutchison "ha[s] not heard from . . . Brown since his August 15,

2023 letter." *Id.* at ¶ 11.  Moreover, Hutchison explained that it is his "practice to file a

[n]otice of [a]ppeal after sentencing in criminal court if requested by a client . . . [and that

he] would have done the same for . . . Brown if requested." *Id.* at ¶ 14.

As noted above, this Court has the discretion to determine whether an

evidentiary hearing is necessary to make a factual determination about whether the

petitioner asked his counsel to appeal.  *See Chang*, 250 F.3d at 86 (explaining that a

"district court may use methods under [s]ection 2255 to expand the record without

conducting a full-blown testimonial hearing" (citing *Blackledge v. Allison*, 431 U.S. 63,

81-82 (1977))).  In cases where the court determines an evidentiary "hearing would not

offer any reasonable chance of altering its view of the facts," it is within the "court's

discretion to choose a middle road that avoid[s] the delay, the needless expenditure of

judicial resources, the burden on trial counsel and the government, and perhaps the

encouragement of other prisoners to make similar baseless claims that would . . .

result[] from a full testimonial hearing." *Id.*; *see also Florez v. United States*, 2007 WL

162764, at *4 (E.D.N.Y. Jan. 18, 2007) (finding that "a full testimonial hearing [wa]s

unnecessary" because "[a] review of the papers submitted by the parties, including a

detailed affidavit from [the attorney], [was] sufficient to decide this issue").  Such is the

case here.

After careful review of Brown's and Hutchison's submissions, this Court finds that a full testimonial hearing "would add little or nothing to the written submissions." *See Chang*, 250 F.3d at 86. In particular, this Court finds that the sworn affidavit of Hutchison, an experienced attorney who has appeared in this Court several times, is more credible than Brown's self-serving assertions. *See United States v. Delgado*, 2022 WL 4396627, at *5 (S.D.N.Y. Sept. 23, 2022) (finding that no evidentiary hearing was necessary where "[t]he credible assertions in counsel's sworn statement undermine[d the petitioner's] self-serving assertion that he specifically instructed defense counsel to file an appeal"). Moreover, the Court is not persuaded that Brown sent a letter to Hutchison asking him to file an appeal, especially because Hutchison has no record of that letter and because Brown has produced no evidence of it. For all those reasons, Brown's claims in his motion concerning ineffective assistance of counsel based on a failure to file a notice of appeal are dismissed, and Brown's motion for an evidentiary hearing, Docket Item 135, is denied.

## II.    REQUEST FOR COUNSEL

At the end of Brown's reply, he asks this Court to "appoint [him] counsel." Docket Item 135 at 14. Under 28 U.S.C. § 2255 and 18 U.S.C. § 3006(A)(2), "the Court may appoint counsel for a financially eligible § 2255 petitioner when 'the interests of justice so require.'" *Harris v. United States*, 2020 WL 4059198, at *2 (W.D.N.Y. July 20, 2020) (quoting 18 U.S.C. § 3006(A)(2)). Additionally, "Rule 8 of the Rules Governing Section 2255 Cases in the United States District Courts require the appointment of counsel when an evidentiary hearing is warranted." *Id.*

18

For the reasons explained above, Brown does not have a viable section 2255 claim. Therefore, an evidentiary hearing is not required. *See* 28 U.S.C. § 2255(b) (no hearing is required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); *Curshen v. United States*, 596 F. App'x 14, 15 (2d Cir. 2015) (summary order) (explaining that "to be entitled to a hearing, a movant must allege a 'plausible or viable' claim" (quoting *United States v. Tarricone*, 996 F.2d 1414, 1418 (2d Cir. 1993))). Nor would the interests of justice be served by appointment of counsel. *See Harris*, 2020 WL 4059198, at *2 (noting that "[t]he likelihood that a movant's or prospective movant's claims have merit is central to the determination whether the interests of justice warrant the appointment of counsel at public expense" (quoting *United States v. El-Hage*, 2016 WL 1178817, at *2 (S.D.N.Y. Mar. 21, 2016))).

For all those reasons, Brown's request to appoint counsel is denied.

## CONCLUSION

For the reasons stated above, Brown's motions for an evidentiary hearing and appointment of counsel, Docket Item 135; and to vacate his sentence under 28 U.S.C. § 2255, Docket Item 119, are DENIED. His petition in Case No. 24-cv-57 is DISMISSED, and the Clerk of the Court shall close that case.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States,* 369 U.S. 438 (1962). The Court also certifies under 28 U.S.C. § 2253(c)(2) that because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are

not debatable among jurists of reason, the petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court denies a certificate of appealability.

Brown must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date this decision and order. *See Williams v. United States*, 984 F.2d 28, 31 (2d Cir. 1993). Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:   August 7, 2025
         Buffalo, New York

 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE